627 So.2d 104 (1993)
SLIM-FAST FOODS COMPANY and Thompson Medical Company, Inc., Petitioners,
v.
Harry David BROCKMEYER, as Personal Representative of the Estate of Jimi Jean Brockmeyer, Deceased, and Harry David Brockmeyer, individually, Respondents.
No. 93-2674.
District Court of Appeal of Florida, Fourth District.
November 24, 1993.
*105 Robert M. Klein and Marlene S. Reiss of Stephen, Lynn, Klein & McNicholas, P.A., Miami, for petitioners.
Louis K. Rosenbloum and Robert J. Mayes of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for respondents.
PER CURIAM.
The panel is in agreement that the matters raised by the present petition, which we deny, warrant discussion.
Basically, the issue is whether the identities of consumers who file complaints with the manufacturer of a nonprescription diet aid, in which they disclose information about their medical conditions without any evidence of requests for confidentiality or anonymity, are protected from discovery by Florida's right to privacy. We conclude they are not.
The above consumer complaints to the manufacturer were made in the form of letter responses to a questionnaire printed on the label of the product, or by telephone call. The trial court properly rejected the petitioners' argument that customers who send nonconfidential letters of complaint to the manufacturer of a nonprescription product are covered by the right to privacy of medical information recognized in Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533 (Fla. 1987).
Petitioner relies in part upon the privilege set forth in 21 C.F.R. § 20.111(c)(3), which protects against disclosure of identifying information about consumers who file complaints with the Food and Drug Administration (FDA). The FDA privilege is extremely limited and is not applicable to the situation here, where the consumer has complained directly to the manufacturer. The trial court's conclusion that disclosure was not barred by this federal rule was correct.
*106 The petitioner has also cited Harris v. Upjohn Co., 115 F.R.D. 191 (S.D.Ill. 1987), which found that reports to drug manufacturers were covered by the doctor-patient privilege. In Harris the disclosure was made in the course of the patient's medical treatment by the treating physician about the method of treatment used. The purpose of the Harris disclosure was to assist the manufacturer in its research and development of the drug. Here, the disclosures were made by consumers who had used a nonprescription, nondrug product on their own who were seeking either compensation or were simply expressing their anger and dissatisfaction, without confidentiality. The complaints were made to (and apparently handled by) the petitioner's consumer service department, not the research department. There is not the same threat of a chilling effect on pharmaceutical research here as in Harris.
While this court has protected the privacy interests of nonparty patients whose names were listed on prescription forms,[1] the trial court appropriately did not extend that privilege to this situation.
This court has recognized that patients' privacy interests require the deletion of identifying information where non-parties' medical files are otherwise discoverable.[2]Haywood v. Samai, 624 So.2d 1154 (Fla. 4th DCA 1993); Ventimiglia v. Moffitt, 502 So.2d 14 (Fla. 4th DCA 1986); Amisub, Inc. v. Kemper, 543 So.2d 470 (Fla. 4th DCA 1989). However, each of those cases involved patient information that was in the control of the treatment providers. Unlike the consumers in this case, none of those non-parties were alleged to have voluntarily disclosed their medical information or records to third parties for non-treatment purposes.[3]
We conclude that by disclosing information about their medical conditions as part of a consumer complaint made directly to the manufacturer, without requesting or receiving any express assurance that the information would be kept confidential, the consumers acted in a manner that was inconsistent with any reasonable expectation of privacy.[4]
The plaintiffs' need for the information must not be disregarded. Accordingly, the trial court correctly found that they should be allowed to contact the consumers in question to determine whether they suffered from the same or substantially similar conditions as the plaintiff's decedent. The degree of similarity was not immediately apparent from the petitioner's records, which determination will be made at trial. Lasar Mfg. Co. v. Bachanov, 436 So.2d 236, 238 (Fla. 3d DCA 1983); Warn Indus. v. Geist, 343 So.2d 44, 46 (Fla. 3d DCA), cert. denied, 353 So.2d 680 (Fla. 1977).
GLICKSTEIN, KLEIN and PARIENTE, JJ., concur.
NOTES
[1] See Springer v. Greer, 341 So.2d 212, 213-14 (Fla. 4th DCA 1976), appeal dismissed, 351 So.2d 406 (Fla. 1977), wherein it was alleged that the patients were drug users or sellers who had received unnecessary prescriptions for narcotics. While the opinion does not address the particular harm that would be caused by public disclosure of the patients' identities in that case, certainly the same fear of damaged reputations and public backlash that was identified in the context of AIDS in Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533 (Fla. 1987), would be involved in the identification of the nonparty patients in Springer as drug addicts or dealers.
[2] Nonparty patients' records are generally not discoverable in medical malpractice cases. McCann v. Foisy, 552 So.2d 341 (Fla. 4th DCA 1989).
[3] In Stall v. State, 570 So.2d 257 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991), the Supreme Court explained that the right to privacy does not attach unless the individual first has a legitimate expectation of privacy:

Before the right to privacy attaches a reasonable expectation of privacy must exist. Determining whether an individual has a legitimate expectation of privacy in any given case must be made by considering all the circumstances, especially objective manifestations of that expectation.
Id. at 260 (citations, emphasis and internal quotation marks omitted).
[4] Holders of statutory privileges may waive protection by voluntary disclosure of privileged information to third parties. § 90.507, Fla. Stat. (1991).