699 So.2d 789 (1997)
Barry Michael BERKELEY and Berkeley Capital Management, Inc., Petitioners,
v.
Dr. Hugh EISEN and Marcia Hanson Eisen, Respondents.
No. 96-1729.
District Court of Appeal of Florida, Fourth District.
September 24, 1997.
*790 Steven Warm, Boca Raton, and Charles L. Pickett, Jr. of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, West Palm Beach, and Lonnie K. Browne of Davis, Gordon, Doner & Chandler, P.A., West Palm Beach, for petitioners.
David H. Brodie of Mandel, Simowitz, Weisman, Kirschner & Diaz, P.A., Boca Raton, for respondents.
PARIENTE, Judge.
Petitioners seek a writ of certiorari to quash a discovery order compelling production of the addresses of non-parties. We grant the writ of certiorari and quash the trial court's discovery order because respondents failed to demonstrate a need for the discovery that outweighs the privacy rights of the non-parties.
Respondents (the Eisens), filed suit against petitioners, Berkeley Capital Management and Barry Berkeley (collectively "Berkeley"), alleging that Berkeley, as their investment manager, placed their funds in unsuitable high-risk investments. They asserted claims based on violations of Chapter 517 (the Florida Securities and Investor Protection Act), common law fraud, and breach of fiduciary duty. The claims were brought individually and not as a class action.
In the course of discovery, the Eisens sought documents concerning the size and allocation of the block trades in which the allegedly risky acquisitions were made. Included in the documents were the names of 75 other clients who also participated in the block trades of several of the riskier stocks. These other clients of Berkeley were otherwise unrelated to the Eisens.
The Eisens then moved to compel the production of the addresses and telephone numbers for these previously-identified clients in order to take their depositions. The motion alleged that the depositions were "essential to the development of the case," without providing any specifics concerning their possible relevance or admissibility.
The trial court granted the Eisens' motion to the extent that it compelled production of the addresses, but not the telephone numbers. The trial court further prohibited disclosure of the addresses to any other persons or entities, "except as may appear in the Court record through appropriate deposition and trial subpoenas."
Article I, section 23 of the Florida Constitution specifically provides a constitutional right of privacy broader in scope than the protection provided in the United States Constitution. See Rasmussen v. South Florida Blood Serv.,Inc., 500 So.2d 533, 536 (Fla. 1987); Winfield v. Division of Pari-Mutuel Wagering, Dep't of Bus. Regulation, 477 So.2d 544, 548 (Fla.1985).
Court orders compelling discovery constitute state action that may impinge on constitutional rights, including the constitutional right of privacy. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); South Florida Blood Serv., Inc. v. Rasmussen, 467 So.2d 798, 803 (Fla. 3d DCA 1985), aff'd, 500 So.2d 533 (Fla.1987). As recognized by our supreme court's decision in Rasmussen, "[t]he potential for invasion of privacy is inherent in the litigation process." 500 So.2d at 535.
In Winfield, our supreme court expressly recognized that "the law in the state of Florida recognizes an individual's legitimate expectation of privacy in financial institution records." 477 So.2d at 547. Winfield involved an individual's bank records, but we discern no meaningful distinction that would exclude a non-party's investment records from the constitutionally-protected zone of privacy. The non-party clients who entrusted their money to Berkeley had a reasonable expectation that their identity, addresses and the nature and amount of their investments would remain confidential.
*791 Although article I, section 23 states that the right of privacy "shall not be construed to limit the public's right of access to public records," there is a statutory exemption from Florida's public records disclosure where the Department of Banking and Financing is investigating or has concluded its investigation of a securities customer's complaint. See § 517.2015, Fla. Stat. (1995). Specifically, the names, addresses, telephone numbers, social security numbers and other identifying information of customers or account holders of investment firms such as Berkeley are protected from public disclosure. See § 517.2015(1)(b)2. Thus, the legislature has recognized the confidential nature of the exact type of information at issue here.[1]
What confuses the issue in this case is that Berkeley has already voluntarily disclosed the names of its clients. Assuming, as Berkeley argues, that its client lists are trade secrets and proprietary business data, those privileges would have been waived by Berkeley's voluntary disclosure. See Hamilton v. Hamilton Steel Corp., 409 So.2d 1111, 1113 (Fla. 4th DCA 1982). However, we reject the Eisens' argument that there has been a waiver of the non-parties' privacy rights by virtue of Berkeley's disclosure of their names. The privacy rights are the clients' not Berkeley's.
There is no indication that the non-party clients gave their permission to be identified, or otherwise took any steps inconsistent with a reasonable expectation of privacy. This is in contrast to Slim-Fast Foods Co. v. Brockmeyer, 627 So.2d 104 (Fla. 4th DCA 1993), where this court allowed disclosure of the identities of consumers who had filed complaints, finding that the affirmative action of contacting the manufacturer to complain about a product was an act inconsistent with any reasonable expectation of privacy. Cf. Smith v. District Court, Second Judicial Dist., 797 P.2d 1244 (Colo.1990) (the facts did not demonstrate that donors to charitable organization had any expectations of privacy concerning their identity).
The fact that the party seeking discovery may already have some of the information sought "does not negate the rights of such non-part[ies] ... to privacy and confidentiality as to their personal information." See Colonial Med. Specialties of South Florida, Inc. v. United Diagnostic Lab., Inc., 674 So.2d 923, 923 (Fla. 4th DCA 1996). Thus, the fact that the Eisens already received the clients' names from Berkeley does not negate the clients' right of privacy. We, therefore, approach this case as if Berkeley had not disclosed the names of its clients.
Our conclusion that there has been no waiver by the non-party investors requires us to determine whether the Eisens established a need for the information overriding the non-party's privacy rights. "[T]he party seeking discovery of confidential information must make a showing of necessity which outweighs the countervailing interest in maintaining the confidentiality of such information." Higgs v. Kampgrounds of America, 526 So.2d 980, 981 (Fla. 3d DCA 1988); see also CAC-Ramsay Health Plans, Inc. v. Johnson, 641 So.2d 434 (Fla. 3d DCA 1994). As our supreme court explained in Rasmussen:
In deciding whether a protective order is appropriate in a particular case, the court must balance the competing interests that would be served by granting discovery or by denying it. Thus, the discovery rules provide a framework for judicial analysis of challenges to discovery on the basis that the discovery will result in undue invasion of privacy. This framework allows for broad discovery in order to advance the state's important interest in the fair and efficient resolution of disputes while at the *792 same time providing protective measures to minimize the impact of discovery on competing privacy interests.

500 So.2d at 535 (citations omitted) (emphasis supplied).
In this case, we analyze the Eisens' need for the names and addresses against this backdrop. In evaluating the Eisens' need for the information, we first note that the essence of the claim is that Berkeley improperly placed the Eisens in high-risk investments. The central issue in this case is therefore whether the purchases were suitable for the Eisens. This requires a factual determination specific to the Eisens, which does not involve Berkeley's other clients.
The Eisens claim that they need to take the depositions to refute Berkeley's testimony that the Eisens wanted to concentrate on more speculative securities, and that this choice is not typical for its other clients. It is doubtful that Berkeley's position as to what its other clients did would even constitute a defense to the Eisens claim. Moreover, even though the Eisens claim to already have some of the addresses, none of these other clients' depositions have been taken. Therefore, the possibility that the depositions of one or more of the other clients may lead to admissible evidence is speculative at best. As noted in balancing privacy interests against the need for the information in Rasmussen:
We recognize that [plaintiff's] interest parallels the state's interest in ensuring full compensation for victims of negligence. However, we find that the discovery order requested here would do little to advance that interest. The probative value of the discovery sought by Rasmussen is dubious at best. The potential of significant harm to most, if not all, of the fifty-one unsuspecting donors in permitting such a fishing expedition is great and far outweighs the plaintiff's need under these circumstances.
Id. at 538 (footnote omitted). We similarly view the efforts here to depose 75 other clients to refute an extremely dubious defense to be little more than a fishing expedition.
In addition, means less intrusive than the release of confidential information should be used where available. See generally Amente v. Newman, 653 So.2d 1030 (Fla. 1995); Rasmussen. Privacy rights are protected without sacrificing the ability to discover legitimate information where the trial court redacts from the records all identifying information. See, e.g., Amente; Haywood v. Samai, 624 So.2d 1154 (Fla. 4th DCA 1993); CAC-Ramsay. Here, however, the Eisens have already been provided with document discovery by Berkeley that includes the trade allocation sheets and the names of the individuals involved in the trades; they now seek the remaining identifying information in order to depose each client.
It is not clear what additional information can be gained from the depositions of 75 non-party clients that has not already been garnered more efficiently from the document discovery. The Eisens' response filed in this case states that the production of the documents already has
belied [Berkeley's] previously sworn testimonial defense that the concentration of speculative investments purchased in [the Eisens] accounts was not `typical' of [Berkeley's] other accounts. Indeed, [Berkeley's] trade allocation sheets reveal that over 50% of [Berkeley's] other clients now appear to have been heavily concentrated in these very same speculative securities, as well!
Thus, it appears from the Eisens' own response that the document production has already materially contradicted one of Berkeley's defenses, even assuming that this would constitute a defense to the Eisens' individual claims.
The Eisens have also admitted that they could otherwise obtain this information through search services and private investigators. Although this alternative may be more costly to the Eisens, cost alone is insufficient to demonstrate that the Eisens' need for the addresses overrides the non-party clients' privacy rights. As in Colonial Medical, the Eisens have failed to meet their burden of showing in this case, based on this record, any need that would override the privacy rights of Berkeley's clients. See also *793 Rasmussen; Voytish v. Ozycz, 695 So.2d 1301 (Fla. 4th DCA 1997).
While Berkeley may be using its clients' shield of privacy for its own protection, this possibility is not reason enough to cause a judicial invasion into the individual non-party's constitutional right of privacy in this case. On remand, the Eisens may request the court to explore whether other means of obtaining the desired information exist through further document production or make a further showing of relevancy. Accordingly, we reverse the order and remand for proceedings consistent with this opinion.
GROSS, J., concurs.
GUNTHER, J., concurs specially with opinion.
GUNTHER, Judge, specially concurring.
Like my colleagues, I would grant certiorari and quash the trial court's discovery order. However, while I agree that the nonparty clients have a general right to privacy under the state constitution, I also believe that the information concerning the nonparty clients' identity is statutorily protected.
Under the chapter governing financial institutions, all books and records pertaining to investors' accounts must be kept confidential by the investment company unless the investors expressly authorize the release of the information. § 655.059(2)(b), Fla. Stat. (1995); see § 655.005(1)(h), (p), Fla. Stat. (1995)(defining "financial institutions" as investment companies). Here, the Eisens, having already been furnished the names of the nonparty clients involved in the contested block trades, seek production of the addresses to match to the nonparty clients' names. Because section 655.059(2)(b) requires an investment company to first secure its clients' permission before releasing any information about them or their accounts, only the nonparty clients may waive their confidentiality protections. § 655.059(2)(b). In this case, the nonparty clients, the holders of the confidentiality privilege under section 655.059(2)(b), did not and have not given their express authorization to Berkeley, and neither have they waived their statutory privilege by their conduct. Cf. § 90.507, Fla. Stat. (1995)(stating that the holder of privileged information waives confidentiality protections by voluntarily disclosing it). Moreover, while the mere release of names and addresses without authorization might not always run afoul of section 655.059(2)(b), it does in this case because the names and addresses sought are already linked to specific account information, i.e., the contested block trade. Thus, I conclude that by already revealing the names of nonparty clients who participated in a specific investment, Berkeley has disclosed information directly relating to their accounts. Further, by now releasing the nonparty clients' addresses to match to their names, Berkeley would again be disclosing confidential investment account information without express authorization and as a result, would be violating the confidentiality protections of section 655.059(2)(b).
The majority opinion notes that neither party has raised the issue of the nonparty clients' confidentiality privilege under section 655.059(2)(b). The failure to raise this issue is quite understandable in this case: The issue is contrary to the Eisens' position because it prevents them from receiving the information they are seeking, and Berkeley is unlikely to raise this issue because it has already disclosed information directly relating to the nonparty clients' accounts, even though it is not the holder of the statutory privilege. Because neither party has any motivation to call this Court's attention to a statutory provision that provides the nonparty clients with confidentiality protections, I believe it is proper for this Court to address section 655.059(2)(b) despite both parties' failure to raise this issue.
As the majority opinion analyzes, another reason the nonparty clients' addresses should not be released is grounded in the fact that the State of Florida holds the right to privacy in high regard. This is evident because not only has the Legislature provided for statutory confidentiality protections, but the people have provided for the constitutional right to privacy. Art. I, § 23, Fla. Const. Court orders compelling discovery constitute state action and thus, implicate the constitutional right to privacy. Seattle Times Co. v. *794 Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); South Fla. Blood Serv. v. Rasmussen, 467 So.2d 798 (Fla. 3d DCA 1985), aff'd, 500 So.2d 533 (Fla.1987). Florida's right to privacy protections attaches when a person has a reasonable expectation of privacy. Stall v. State, 570 So.2d 257 (Fla.1990), cert. denied, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991). In my view, the nonparty clients in this case have a reasonable expectation of privacy regarding their names, addresses, and involvement in a specific investment. Obviously, the Legislature agrees because it passed section 655.059(2)(b), protecting privacy regarding information held by a financial institution. Here, not only have the nonparty clients not expressly authorized Berkeley to release information regarding their financial accounts, but they likewise have not acted in a manner inconsistent with their reasonable expectation of privacy simply by virtue of having an account at an investment company. Cf. Slim-Fast Foods Co. v. Brockmeyer, 627 So.2d 104 (Fla. 4th DCA 1993) (holding that consumers who affirmatively contacted manufacturer to complain about product acted inconsistently with any reasonable expectation of privacy).
The Eisens have already received some of the information they seekdespite the protections of section 655.059(2)(b) and the reasonable expectation of privacyand they admit that all of the additional information requested could be otherwise obtained through search services and private investigators. Admittedly, this alternative is more costly, but cost alone is insufficient to show how the Eisens' need for the information should override the nonparty clients' privacy rights. Colonial Med. Specialties v. United Diagnostic Labs., Inc., 674 So.2d 923 (Fla. 4th DCA 1996); Haywood v. Samai, 624 So.2d 1154 (Fla. 4th DCA 1993).
In sum, I conclude that the nonparty clients' names and addresses are protected from discovery by section 655.059(2)(b) and furthermore, they have a reasonable expectation of privacy concerning this information. In my opinion, both of these reasons justify granting the petition for writ of certiorari and quashing the order compelling the production of the addresses of the nonparty clients.
NOTES
[1] Subsection 655.059(2)(b), Florida Statutes (1995), provides that financial institutions shall keep all books and records pertaining to "the deposit accounts and loans of depositors, borrowers, members, and stockholders" confidential unless the account holder expressly authorizes the release of the information. Subsection 655.005(1)(h) defines a "financial institution" as "a state or federal association, bank, trust company, international bank agency, representative office or international administrative office, or credit union." Subsection 655.005(1)(p) pertains to "state financial institutions." As an investment company, Berkeley does not fall within either statutory definition. Neither party raised the applicability of this statute in the trial court or on appeal.