741 So.2d 572 (1999)
NEWS-JOURNAL CORPORATION, et al., Petitioners,
v.
Kit CARSON, Respondent.
No. 99-1459.
District Court of Appeal of Florida, Fifth District.
August 20, 1999.
Rehearing Denied October 15, 1999.
*573 Jonathan D. Kaney, III and Jonathan D. Kaney, Jr., of Cobb, Cole & Bell, Daytona Beach, for Petitioners.
Kevin Kitpatrick Carson of Kevin "Kit" Carson, P.A., Daytona Beach, for Respondent.
W. SHARP, J.
The issue in this case is whether Florida's qualified journalist's privilege statute, section 90.5015(2), Florida Statutes (Supp. 1998), bars discovery and production of two documents given to the News-Journal by Carson, during his interview by the News-Journal's reporters and employees when he was running for the office of county judge. Carson is suing the News-Journal and its officers and employees for libel.
The trial judge held that the statutory privilege did not bar discovery and production of the two documents, because they had been given to the News-Journal by Carson. The News-Journal seeks certiorari review of that order. See, e.g., Gold Coast Publications, Inc. v. State, 669 So.2d 316 (Fla. 4th DCA), rev. denied, 682 So.2d 1099 (Fla.1996). We agree with the trial judge's ruling for the reasons stated in this opinion. Accordingly, we deny the writ.
The qualified journalist's privilege, which has recently been codified in Florida, is one of many such statutes adopted in other states.[1]
Florida's statute provides:

*574 (2) PrivilegeA professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. A party seeking to overcome this privilege must make a clear and specific showing that:
(a) The information is relevant and material to unresolved issues that have been raised in the proceedings for which the information is sought;
(b) The information cannot be obtained from alternative sources; and
(c) A compelling interest exists for requiring disclosure of the information.
(3) DisclosureA court shall order disclosure pursuant to subsection (2) only of that portion of the information for which the showing under subsection
(2) has been made and shall support such order with clear and specific findings made after a hearing.
(4) WaiverA professional journalist does not waive the privilege by publishing or broadcasting information.
One document involved in this proceeding is an unemployment compensation form. A copy of that document was attached by the News-Journal to an affidavit filed in this lawsuit. By so doing, the News-Journal revealed its contents and in essence admitted its identity. This constitutes a waiver of the privilege.[2] Although the statute provides that publication or broadcasting the information does not waive the privilege, the act of filing a document in the public records is a different matter.
The second document, a job evaluation form, was not placed in the public records. Seeking to uphold the ruling of the trial court, Carson argues that the document is "physical evidence" and the statute makes all physical evidence exempt from the scope of the privilege. In particular, the statute provides:
This privilege applies only to the information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes.
This appears to be a problem of a dangling or scattered modifier. Does "of crimes" modify all three nouns at the end of the sentence or only the last one? Because "eyewitness observations" appears twice in the sentence, it must be intended to be modified by "of crimes," the second time it appears. It follows that the first noun, "physical evidence," also is intended to be similarly modified.
This interpretation is consistent with State v. Davis, 720 So.2d 220 (Fla. 1998), where the court harmonized prior case law with the new statute. Davis involved information a newspaper reporter had gathered by interviewing the victim of a crime during her work as a reporter. Because the information was relevant to the defense of a person in a criminal proceeding, the court concluded that under the statute and case law, based on a balancing test, the information should be revealed. Perhaps in response to the prior case law, the Legislature decided to exclude from the scope of the privilege, so that it does not apply and no balancing *575 test need be undertaken, physical evidence of a crime, eyewitness observations of a crime, and visual or audio recording of crimes. But information concerning crimes obtained by a newspaper reporter, as well as all other information obtained, is subject to the qualified privilege and the balancing test.
We also reject Carson's argument that "documents" are "physical evidence." The term "information" encompasses a broad category of tangible things such as memos, notes, letters, papers, and microfiche, not just the reporter's recollections.[3] If the privilege was not intended to encompass such tangible things, it would not have been necessary for the Legislature to expressly exclude from the term "information," the tangible items pertaining to crimes. Further, the privilege necessarily must be interpreted in this fashion in order to safeguard the basic privilege. Commonly, information obtained by reporters in news-gathering efforts is placed in notes and memos, or papers generated by informants or other reporters. It would make no sense to limit the scope of the privilege to only information which is not in some written or tangible form.
We thus conclude that the second document is within the statutory privilege. However, we agree the privilege should not apply in this case because of the balancing factors set out in the statute. Normally, a trial court should make that determination, but here there is little dispute about the facts.
With regard to the first factor of the statutory balancing test,[4] the document is clearly relevant to the issues in this case to establish actual knowledge on the part of the News-Journal. The document theoretically can show that the News-Journal knew "true facts" when it printed the allegedly libelous news story, or had a reasonable basis not to print the story without further inquiry. In order to prevail in a defamation suit, a public figure such as Carson, must prove the libel was published with actual malice, either with knowledge of the truth or with reckless disregard for it,[5] and he must establish this heavy burden by clear and convincing evidence.[6]
With regard to the second statutory factor,[7] under the facts of this case there obviously is no other source from which Carson can obtain the document. Carson can easily obtain additional copies, but what is at issue here is the content of the particular copy Carson gave to the News-Journal before it wrote the allegedly libelous article. Only that can establish a basis to argue what the News-Journal knew or should have known at the time it published the alleged defamation.
The third statutory factor[8] requires a court to find there is a compelling interest to require disclosure. This has reference to the balancing or weighing test as explained in Davis, where Justice Overton said:
When determining the compelling need of a defendant, however, a court not only must weigh the concerns expressed by Justice Powell; it also must factor into the equation the federal and Florida constitutional rights to compulsory and due process so as to ensure that the defendant receives a fair trial.
Davis, 720 So.2d at 227.
Since this case is a civil proceeding, rather than a criminal proceeding, the *576 Sixth Amendment and Fifth Amendment due process principles are not involved, but the privilege still applies.[9] The right of a person to bring a libel suit to defend his or her reputation has not been given a constitutional basis.[10] However, the common law has long recognized and upheld the right of persons damaged by libel and slander to bring a tort suit to redress their injuries caused by a defamatory publication. This is a strong public policy which carries great weight.[11] In many such cases, upholding the privilege has the effect of making proof of actual malice impossible because establishing what the publisher knew or did not know at the time of the publication depends on the kind and quality of the information and identity of the sources at hand when the publication was made.[12] In recognition of this fact, some state shield laws are made inapplicable in defamation suits where bad faith or malice are alleged or where the media defendant raises a confidential source as a defense,[13] although it fits within the literal wording of the statute. Florida's privilege applies to confidential, as well as not confidential sources.[14]
However, where "the source" is seeking production of the information which it furnished to the media, application of the privilege appears far less compelling than in other cases.[15] And, where the media and newspaper reporter involved are defendants in the libel suit, upholding the privilege is also less compelling.[16] When weighed against the possibility that Carson stands to lose his day in court and be denied access to the courts to redress his alleged libel if the privilege is upheld, in this case, the privilege must give way.
Petition for Writ of Certiorari DENIED.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] See State v. Davis, 720 So.2d 220, 224, n. 3 (Fla.1998). See also Carl C. Monk, Evidentiary Privilege for Journalists' Sources: Theory and Statutory Protection, 51 Mo. L.Rev. 1 (1986). These laws are commonly referred to as shield laws. The scope and wording of the shield statutes varies from state-to-state, but all must comply with a limitations and balancing test set forth in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). See, e.g., Jamerson v. Anderson News-papers, Inc., 469 N.E.2d 1243 (Ind.Ct.App. 1984).
[2] See § 90.507, Fla. Stat. "A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person ... voluntarily discloses... or consents to the disclosure of, any significant part of the matter or communication." See, e.g., Berkeley v. Eisen, 699 So.2d 789 (Fla. 4th DCA 1997) (voluntary disclosure of client lists alleged to be privileged trade secrets would waive privilege).
[3] See Maressa v. New Jersey Monthly, 89 N.J. 176, 445 A.2d 376 (1982); Coughlin v. Westinghouse Broadcasting and Cable, Inc., 603 F.Supp. 377 (E.D.Pa.), affirmed, 780 F.2d 340 (3d Cir.1985).
[4] § 90.5015(2)(a), Fla. Stat.
[5] See New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1979).
[6] See Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
[7] § 90.5015(2)(b), Fla. Stat.
[8] § 90.5015(2)(c), Fla. Stat.
[9] See Morris Communications Corp. v. Frangie, 720 So.2d 230 (Fla.1998).
[10] Maressa v. New Jersey Monthly, 89 N.J. 176, 445 A.2d 376 (1982).
[11] See Mitchell v. Superior Court of Marin County, 37 Cal.3d 268, 208 Cal.Rptr. 152, 690 P.2d 625 (1984).
[12] See Mitchell.
[13] See Carl C. Monk, Evidentiary Privilege for Journalists' Sources: Theory and Statutory Protection, 51 Mo. L.Rev. 1, 8 (1986).
[14] See State v. Davis, 720 So.2d 220 (Fla. 1998).
[15] Compare Jamerson v. Anderson Newspapers, Inc., 469 N.E.2d 1243 (Ind.App.Ct.1984).
[16] See Mitchell.