DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARIA F. LEON NUCCI** and **HENRY LEON,** her husband,
Petitioners,

v.

**TARGET CORPORATION, AMERICAN CLEANING CONTRACTING, INC.,** and **FIRST CHOICE BUILDING MAINTENANCE, INC.,**
Respondents.

No. 4D14-138

[January 7, 2015]

Petition for writ of certiorari to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 10-45572 (21).

John H. Pelzer of Greenspoon Marder, P.A., Fort Lauderdale, and Victor Kline of Greenspoon Marder, P.A., Orlando, for petitioners.

Nicolette N. John and Thomas W. Paradise of Vernis & Bowling of Broward, P.A., Hollywood, for respondent, Target Corporation.

GROSS, J.

In a personal injury case, Maria Nucci petitions for certiorari relief to quash a December 12, 2013 order compelling discovery of photographs from her Facebook account. The photographs sought were reasonably calculated to lead to the discovery of admissible evidence and Nucci's privacy interest in them was minimal, if any. Because the discovery order did not amount to a departure from the essential requirements of law, we deny the petition.

In her personal injury lawsuit, Nucci claimed that on February 4, 2010, she slipped and fell on a foreign substance on the floor of a Target store. In the complaint, she alleged the following:

- Suffered bodily injury
- Experienced pain from the injury
- Incurred medical, hospital, and nursing expenses, suffered physical handicap

- Suffered emotional pain and suffering
- Lost earnings
- Lost the ability to earn money
- Lost or suffered a diminution of ability to enjoy her life
- Suffered aggravation of preexisting injuries
- Suffered permanent or continuing injuries
- Will continue to suffer the losses and impairment in the future

Target took Nucci's deposition on September 4, 2013. Before the deposition, Target's lawyer viewed Nucci's Facebook profile and saw that it contained 1,285 photographs. At the deposition, Nucci objected to disclosing her Facebook photographs. Target's lawyer examined Nucci's Facebook profile two days after the deposition and saw that it listed only 1,249 photographs. On September 9, 2013, Target moved to compel inspection of Nucci's Facebook profile. Target wrote to Nucci and asked that she not destroy further information posted on her social media websites. Target argued that it was entitled to view the profile because Nucci's lawsuit put her physical and mental condition at issue.

Nucci's response to the motion explained that, since its creation, her Facebook page had been on a privacy setting that prevented the general public from having access to her account. She claimed that she had a reasonable expectation of privacy regarding her Facebook information and that Target's access would invade that privacy right. In addition, Nucci argued that Target's motion was an overbroad fishing expedition.

On October 17, 2013, the trial court conducted a hearing on Target's motion to compel. At the hearing, Target showed the court photographs from a surveillance video in which Nucci could be seen walking with two purses on her shoulders or carrying two jugs of water. Again, Target argued that because Nucci had put her physical condition at question, the relevancy of the Facebook photographs outweighed Nucci's right to privacy. It also argued that there was no constitutional right to privacy in photographs posted on Facebook. The circuit court denied Target's motion to compel, in part because the request was "vague, overly broad and unduly burdensome."

Target responded to the court's ruling by filing narrower, more focused discovery requests. Target served Nucci with a set of Electronic Media Interrogatories, with four questions. It also served a Request for Production of Electronic Media, requesting nine items. In response to the interrogatories, Nucci objected on the grounds of (1) privacy; (2) items not readily accessible; and (3) relevance.

As to the Request for Production, Nucci raised the same three objections and additionally argued that the request was (4) overbroad; (5) brought solely to harass; (6) "over[ly] burdensome;" (7) "unduly burdensome"; and (9) unduly vague. Nucci raised only these general claims and no objections specifically directed at any particular photograph.

Target moved that the trial court disallow Nucci's objections. At a hearing on the motion, Target conceded that its request for production should be limited to photographs depicting Nucci. After a hearing on the motion, the trial court granted Target's motion in part and denied it in part. On December 12, 2013, the trial court compelled answers to the following interrogatories:

1. Identify all social/professional networking websites that Plaintiff is registered with currently (such as Facebook, MySpace, LinkedIn, Meetup.com, MyLife, etc.)

2. Please list the number and service carrier associated with each cellular telephone used by the Plaintiff and/or registered in the Plaintiff's name (this includes all numbers registered to and/or used by the Plaintiff under a "family plan" or similar service) at the time of loss and currently.

The order also compelled production of the following items:

1. For each social networking account listed in response to the interrogatories, please **provide copies or screenshots of all photographs associated with that account during the two (2) years prior to the date of loss.**

2. For each social networking account listed in the interrogatories, provide **copies or screenshots of all photographs associated with that account from the date of loss to present**.

3. For each cell phone listed in the interrogatories, please provide **copies or screenshots of all photographs associated with that account during the two years prior to the date of loss.**

4. For each cellular phone listed in response to the interrogatories, please provide **copies or screenshots of all photographs associated with that account from the date of loss to present.**

5. For each cellular phone listed in the interrogatories, please provide **copies of any documentation outlining what calls were made or received on the date of loss**.

Nucci argues that the December 12 order departs from the essential requirements of the law because it constitutes an invasion of privacy.[1] Citing to *Salvato v. Miley*, No. 5:12-CV-635-Oc-10PRI, 2013 WL 2712206 (M.D. Fla. June 11, 2013), which involved a request for e-mails and text messages, she contends that "the mere hope" that the discovery yields relevant evidence is not enough to warrant production. She also argues that the traditional rules of relevancy still apply to a request for social media materials. Nucci additionally asserts that her activation of privacy settings demonstrates an invocation of federal law. *See Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 665 (D.N.J. 2013). Relying upon *Ehling*, Nucci argues that her private Facebook posts were covered by the Federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, and were not therefore discoverable. We note that Nucci objected below to *all* disclosure; she did not attempt to limit disclosure of the photographs by establishing discrete guidelines. *See Reid v. Ingerman Smith LLP*, No. CV 2012-0307(ILG)(MDG), 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010).

In its response, Target points out, as it did below, that surveillance videos show Nucci carrying heavy bags, jugs of water, and doing other physical acts, suggesting that her claim of serious personal injury is suspect.

Target suggests that the material ordered is relevant to Nucci's claim of injury in that it allows a comparison of her current physical condition and limitations to her physical condition and quality of life before the date of the slip and fall. In its response to this Court, Target concedes that the order is limited to photographs depicting Nucci from the two years before the date of the incident to the present. It argues that the trial court did not grant unfettered access because it did not compel the production of passwords to her social networking accounts.

As to material injury or harm, Target points out that Nucci has not claimed that production of any particular photograph or other identifiable material will cause her damage or embarrassment. Citing to *Davenport v. State Farm Mutual Automobile Insurance Co.*, No. 3:11-cv-632-J-JBT, 2012

---

[1]The petition challenges the order to produce content from social networking sites. The petition does not challenge that portion of the orders below pertaining to a cellular telephone.

- 4 -

WL 555759 (M.D. Fla. Feb. 21, 2012), Target contends that the content of social networking sites is not privileged or protected by the right to privacy. It notes that Facebook's terms and conditions explain that, regardless of a user's intentions, the material contained in a post could be disseminated by Facebook at its discretion or under court order.

Finally, Target argues that in the context of a civil lawsuit, Florida courts can compel a party to release relevant records from social networking sites without implicating or violating the SCA.

### *Discussion*

This case stands at the intersection of a litigant's privacy interests in social media postings and the broad discovery allowed in Florida in a civil case. Consideration of four factors leads to the conclusion that Nucci's petition for certiorari should be denied. First, certiorari relief is available in only a narrow class of cases and this case does not meet the stringent requirements for certiorari relief. Second, the scope of discovery in civil cases is broad and discovery rulings by trial courts are reviewed under an abuse of discretion standard. Third, the information sought—photographs of Nucci posted on Nucci's social media sites—is highly relevant. Fourth, Nucci has but a limited privacy interest, if any, in pictures posted on her social networking sites.

Nucci's petition challenges only the discovery of photographs from social networking sites, such as Facebook. Thus, the order compelling the answers to interrogatories and production pertaining to a cellular phone are not at issue. Similarly, our ruling in this case covers neither communications other than photographs exchanged through electronic means nor access to other types of information contained on social networking sites.

### *Legal Standard for Certiorari*

Certiorari is not available to review every erroneous discovery ruling. To be entitled to certiorari, the petitioner must establish three elements: "'(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.'" *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011) (quoting *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla. 2004)). The last two elements, often referred to as "irreparable harm," are jurisdictional. If a petition fails to make a threshold showing of irreparable harm, this Court will dismiss the petition. *Bared & Co., Inc. v. McGuire*, 670 So. 2d 153, 157 (Fla. 4th DCA 1996).

Overbreadth of discovery alone is not a basis for certiorari jurisdiction. *Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 456 (Fla. 2012). Similarly, mere irrelevance is not enough to justify certiorari relief. Certiorari may be granted from a discovery order where a party "affirmatively establishes" that the private information at issue is not relevant to any issue in the litigation and is not reasonably calculated to lead to admissible evidence. *Id.* at 457 (quoting *Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 95 (Fla. 1995)); *see also Berkeley v. Eisen*, 699 So. 2d 789 (Fla. 4th DCA 1997) (granting certiorari relief to protect privacy rights of non-parties to litigation). "The concept of relevancy has a much wider application in the discovery context than in the context of admissible evidence at trial." *Bd. of Trs.*, 99 So. 3d at 458.

Certiorari relief is discretionary, but this Court should exercise this discretion only where the party has shown that "'there has been a violation of clearly established principle of law resulting in a miscarriage of justice.'" *Williams*, 62 So. 3d at 1133 (quoting *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 527 (Fla. 1995)). The error must be serious to merit certiorari relief. Even where a departure from the essential requirements of law is shown, this Court may still deny the petition as certiorari relief is discretionary. *Id.*

### *The Broad Scope of Discovery*

A "part[y] may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Fla. R. Civ. P. 1.280(b)(1). "It is not ground for objection that the information sought will be inadmissible at the trial *if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*" *Id.* (emphasis added). Florida Rule of Civil Procedure 1.350(a) includes electronically stored information within the scope of discovery.[2] An outer limit of discovery is that "'litigants are

---

[2]Rule 1.350(a) states:

> Any party may request any other party (1) to produce and permit the party making the request, or someone acting in the requesting party's behalf, to inspect and copy any designated documents, *including electronically stored information*, writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the party to whom the request is directed through detection devices into reasonably usable form, that constitute or contain matters within the scope of rule 1.280(b) and that are in

not entitled to *carte blanche* discovery of irrelevant material.'" *Life Care Ctrs. of Am. v. Reese*, 948 So. 2d 830, 832 (Fla. 5th DCA 2007) (quoting *Tanchel v. Shoemaker*, 928 So. 2d 440, 442 (Fla. 5th DCA 2006)). Because the permissible scope of discovery is so broad, a "trial court is given wide discretion in dealing with discovery matters, and unless there is a clear abuse of that discretion, the appellate court will not disturb the trial court's order." *Alvarez v. Cooper Tire & Rubber Co.*, 75 So. 3d 789, 793 (Fla. 4th DCA 2011) (direct appeal of discovery issue). It is because of this wide discretion accorded to trial judges that it is difficult to establish certiorari jurisdiction of discovery orders.

In a personal injury case where the plaintiff is seeking intangible damages, the fact-finder is required to examine the quality of the plaintiff's life before and after the accident to determine the extent of the loss. From testimony alone, it is often difficult for the fact-finder to grasp what a plaintiff's life was like prior to an accident. It would take a great novelist, a Tolstoy, a Dickens, or a Hemingway, to use words to summarize the totality of a prior life. If a photograph is worth a thousand words, there is no better portrayal of what an individual's life was like than those photographs the individual has chosen to share through social media before the occurrence of an accident causing injury. Such photographs are the equivalent of a "day in the life" slide show produced by the plaintiff before the existence of any motive to manipulate reality. The photographs sought here are thus powerfully relevant to the damage issues in the lawsuit. The relevance of the photographs is enhanced, because the post-accident surveillance videos of Nucci suggest that her injury claims are suspect and that she may not be an accurate reporter of her pre-accident life or of the quality of her life since then. The production order is not overly broad under the circumstances, as it is limited to the two years prior to the incident up to the present; the photographs sought are easily accessed and exist in electronic form, so compliance with the order is not onerous.

### The Right of Privacy

To curtail the broad scope of discovery allowed in civil litigation, Nucci asserts a right of privacy. However, the relevance of the photographs overwhelms Nucci's minimal privacy interest in them.

---

the possession, custody, or control of the party to whom the request is directed . . . .

(Emphasis added).

The Florida Constitution expressly protects an individual's right to privacy. *See* Art. I, § 23, Fla. Const. ("Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."). This right is broader than the right to privacy implied in the Federal Constitution. *Berkeley*, 699 So. 2d at 790. The right to privacy in the Florida Constitution "ensures that individuals are able 'to determine for themselves when, how and to what extent information about them is communicated to others.'" *Shaktman v. State*, 553 So. 2d 148, 150 (Fla. 1989) (quoting A. Westin, *Privacy and Freedom* 7 (1967)).

Before the right to privacy attaches, there must exist a legitimate expectation of privacy. *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation*, 477 So. 2d 544, 547 (Fla. 1985). Once a legitimate expectation of privacy is shown, the burden is on the party seeking disclosure to show the invasion is warranted by a compelling interest and that the least intrusive means are used. *Id.* In the civil discovery context, courts must engage in a balancing test, weighing the need for the discovery against the privacy interests. *Rasmussen v. S. Fla. Blood Serv., Inc.*, 500 So. 2d 533, 535 (Fla. 1987). If the person raising the privacy bar establishes the existence of a legitimate expectation of privacy, the party seeking to obtain the private information has the burden of establishing need sufficient to outweigh the privacy interest. *Berkeley*, 699 So. 2d at 791-92.

In a thoughtful opinion, a Palm Beach County circuit judge has summarized the nature of social networking sites as follows:

> Social networking sites, such as Facebook, are free websites where an individual creates a "profile" which functions as a personal web page and may include, at the user's discretion, numerous photos and a vast array of personal information including age, employment, education, religious and political views and various recreational interests. *Trail v. Lesko*, [No. GD-10-017249,] 2012 WL 2864004 (Pa. Com. Pl. July 5, 2012). Once a user joins a social networking site, he or she can use the site to search for "friends" and create linkages to others based on similar interests. Kelly Ann Bub, Comment, *Privacy's Role in the Discovery of Social Networking Site Information*, 64 SMU L. Rev. 1433, 1435 (2011).
>
> Through the use of these sites, "users can share a variety of materials with friends or acquaintances of their choosing, including tasteless jokes, updates on their love lives, poignant

reminiscences, business successes, petty complaints, party photographs, news about their children, or anything else they choose to disclose." Bruce E. Boyden, Comment, *Oversharing: Facebook Discovery and the Unbearable Sameness of Internet Law*, 65 Ark. L. Rev. 39, 42 (2012). As a result, social networking sites can provide a "treasure trove" of information in litigation. Christopher B. Hopkins, *Discovery of Facebook Contents in Florida Cases*, 31 No. 2 Trial Advoc. Q. 14 (2012).

*Levine v. Culligan of Fla., Inc.*, Case No. 50-2011-CA-010339-XXXXMB, 2013 WL 1100404, at *2-*3 (Fla. 15th Cir. Ct. Jan. 29, 2013).

We agree with those cases concluding that, generally, the photographs posted on a social networking site are neither privileged nor protected by any right of privacy, regardless of any privacy settings that the user may have established. *See Davenport v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-cv-632-J-JBT, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012); *see also Patterson v. Turner Constr. Co.,* 931 N.Y.S.2d 311, 312 (N.Y. App. 2011) (holding that the "postings on plaintiff's online Facebook account, if relevant, are not shielded from discovery merely because plaintiff used the service's privacy settings to restrict access"). Such posted photographs are unlike medical records or communications with one's attorney, where disclosure is confined to narrow, confidential relationships. Facebook itself does not guarantee privacy. *Romano v. Steelcase, Inc.*, 907 N.Y.S.2d 650, 656 (N.Y. Sup. Ct. 2010). By creating a Facebook account, a user acknowledges that her personal information would be shared with others. *Id.* at 657. "Indeed, that is the very nature and purpose of these social networking sites else they would cease to exist." *Id.*

Because "information that an individual shares through social networking web-sites like Facebook may be copied and disseminated by another," the expectation that such information is private, in the traditional sense of the word, is not a reasonable one. *Beswick v. N.W. Med. Ctr., Inc.*, No. 07-020592 CACE(03), 2011 WL 7005038 (Fla. 17th Cir. Ct. Nov. 3, 2011). As one federal judge has observed,

Even had plaintiff used privacy settings that allowed only her "friends" on Facebook to see postings, she "had no justifiable expectation that h[er] 'friends' would keep h[er] profile private. . . . " *U.S. v. Meregildo,* 2012 WL 3264501, at *2 (S.D.N.Y. 2012). In fact, "the wider h[er] circle of 'friends,' the more likely [her] posts would be viewed by someone [s]he never expected to see them." *Id.* Thus, as the Second Circuit has recognized, legitimate expectations of privacy may be lower in

e-mails or other Internet transmissions. *U.S. v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004) (contrasting privacy expectation of e-mail with greater expectation of privacy of materials located on a person's computer).

*Reid v. Ingerman Smith LLP,* No. CV2012-0307(ILG)(MDG), 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012); *see also Tompkins v. Detroit Metro. Airport,* 278 F.R.D. 387, 388 (E.D. Mich. 2012) (holding that "material posted on a 'private' Facebook page, that is accessible to a selected group of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil law notions of privacy"); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (indicating that social networking site content is neither privileged nor protected, but recognizing that party requesting discovery must make a threshold showing that such discovery is reasonably calculated to lead to admissible evidence).

We distinguish this case from *Root v. Balfour Beatty Construction, LLC*, 132 So. 3d 867 (Fla. 2d DCA 2014). That case involved a claim filed by a mother on behalf of her three-year-old son who was struck by a vehicle. Unlike this case, where the trial court ordered the production of photographs from the plaintiff's Facebook account, the court in *Balfour* ordered the production of a much broader swath of Facebook material without any temporal limitation—postings, statuses, photos, "likes," or videos—that relate to the mother's relationships with all of her children, not just the three year old, and with "other family members, boyfriends, husbands, and/or significant others, both prior to, and following the accident." *Id.* at 869. The second district determined that "social media evidence is discoverable," but held that the ordered discovery was "overbroad" and compelled "the production of personal information . . . not relevant to" the mother's claims. *Id.* at 868, 870. The court found that this was the type of "carte blanche" irrelevant discovery the Florida Supreme Court has sought to guard against. *Id.* at 870; *Langston*, 655 So. 2d at 95 ("[W]e do not believe that a litigant is entitled *carte blanche* to irrelevant discovery.") The discovery ordered in this case is narrower in scope and, as set forth above, is calculated to lead to evidence that is admissible in court.

Finally, we reject the claim that the Stored Communications Act, 18 U.S.C. §§ 2701-2712, has any application to this case. Generally, the "SCA prevents 'providers' of communication services from divulging private communications to certain entities and/or individuals." *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd on other grounds by City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010) (citation

omitted). The act does not apply to individuals who use the communications services provided. *See, e.g., Flagg v. City of Detroit*, 252 F.R.D. 346, 349 (E.D. Mich. 2008) (ruling that the SCA does not preclude civil discovery of a party's electronically stored communications which remain within the party's control even if they are maintained by a non-party service provider).

Finding no departure from the essential requirements of law, we deny the petition for certiorari.

STEVENSON and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***