765 So.2d 778 (2000)
BEVERLY ENTERPRISES-FLORIDA, INC., etc., Petitioner,
v.
Bartie L. DEUTSCH, etc., Respondent.
No. 5D00-278.
District Court of Appeal of Florida, Fifth District.
July 21, 2000.
Clarification and Rehearing Denied August 16, 2000.
*779 James V. Etscorn, Michael N. Hutter and Robert C. Yee of Baker & Hostetler LLP, Orlando, for Petitioner.
Andrew Hamilton of Andrew Hamilton, P.A., Tampa, for Respondent.
COBB, J.
Beverly Enterprises-Florida, Inc. petitions for a writ of certiorari to review the trial court's non-final order allowing discovery. Beverly is the defendant in a negligence suit regarding the care and treatment of an elderly patient, Bartie Deutsch. Two issues are presented:
1. Whether the other residents of the nursing home's right to privacy is violated by the order allowing inspection of Deutsch's former room; and
2. Whether Beverly has standing to protect the right to privacy of one of its employees, a vice-president not involved in the care of the patient.
In December 1997, the plaintiff below, 84-year-old Bartie Deutsch, had a number of health problems. She became a patient in a nursing home run by the defendant, Beverly Enterprises. She sued for negligence. She also brought a claim regarding the care and treatment of a patient under Chapter 400 ("Nursing Homes and Related Health Care Facilities"). The complaint raised a number of claims of Beverly's negligence. Deutsch sought discovery and the trial court ordered an inspection of the room where she had resided and production of a personnel file of one of Beverly's vice presidents, one Alan Davis, who was not involved in Deutsch's care.
Beverly first argues that the compelled discovery involves privacy rights of non-parties. It asserts that the trial court's order allowing entry and inspection of the room where Deutsch resided:
will violate substantive privacy rights of innocent non-parties. This is not a "premises" case and the nature and condition of the specific premises in which Mrs. Deutsch resided during her residency are not at issue in this lawsuit. Even assuming that the specific rooms in which Mrs. Deutsch resided were relevant to this proceeding, Trial Court has failed to narrowly tailor the entry so that it does not infringe on the privacy of elderly residents in the nursing home. Many of the residents suffer from various forms of dementia and are unable to give consent to appreciate why they are either being moved out of their rooms or are having their rooms invaded by strangers.
Beverly's second argument is that Davis was merely the "Group Vice President of the group to which [Beverly] reported." He "was not a direct employee of th[e] facility, nor a caregiver or directly involved with the care and attention Mrs. Deutsch received." Therefore, while Beverly provided the personnel files of 13 employees and the personnel files of two caregivers (April Jones and Paige Moore), Beverly objected to producing Davis's personnel file. Beverly asserts that compelling production of Davis's personnel file violates his right to privacy.
*780 Deutsch responds that the trial court properly entered a proper, narrowly drawn order compelling Beverly:
1. To produce specific items in Alan Davis' personnel file. Davis is a former Beverly employee whose actions directly impacted upon the care and treatment to Deutsch; and
2. To allow at the convenience of the current residents, an on-site inspection of the premises where Deutsch's accident occurred by no more than three representatives, including Deutsch's counsel, with a prohibition against recording or photographing the current residents.
Deutsch maintains that the trial court's order correctly balances the competing interest of the plaintiffs entitlement to reasonable discovery with Beverly's. She also asserts that Beverly has made no showing that it will be irreparably harmed by complying with this order. Deutsch asserts that she was a resident of Beverly's nursing home where she was admitted for rehabilitation of a fractured hip. Despite the fact that Beverly knew she was a fall risk, Beverly allowed her to fall five times in two weeks without changing her care plan, altering her treatment or supervision, moving her to a room closer to the nurse's station, preparing restraint assessments, preparing fall assessments, or providing personal alarms or other interventions. Her sixth fall resulted in a refracture of the hip and a decubitus ulcer which required surgery. Deutsch's theory is that Beverly intentionally under-staffed its facility causing the injuries to Deutsch. Deutsch also argues:
[I]t is significant that Beverly has made no showing that it has standing to assert third-party privacy rights on behalf of its former employee, Alan Davis. When faced with this same issue, the First District Court of Appeal held that "a mere employee/employer relationship is not the kind of special relationship necessary for third-party standing."
For this proposition, Deutsch relies upon North Florida Regional Hosp., Inc. v. Douglas, 454 So.2d 759, 760 (Fla. 1st DCA 1984), to indicate that Beverly has not demonstrated it has standing to assert the third-party privacy rights of its former employee. Deutsch also argues that, at the time of her falls, each of the rooms had two residents and therefore "one suspects that in addition to what should be a fairly consistent flow of Beverly employees, each current resident of these rooms expects the room to be viewed by family and friends of the other residents. Obviously, the one resident at all times has a right to be in and observe the other resident and whatever that resident has exposed to plain view." Deutsch thus contends that the patients do not have an expectation of absolute privacy. She points to the fact that she agreed not to photograph or tape the residents or to conduct the inspection at mealtimes, shower times, and agreed to conduct them whenever it was most convenient and least intrusive for the residents.
On the issue of Alan Davis's personnel file, Beverly argues that the personnel file "contains personal information of a potentially sensitive nature and for which Mr. Davis, a non-care giver, has a right to expect will be treated as confidential and private. As a group vice president, Mr. Davis never provided care to Respondent." Beverly says that unlike the personnel files of April Jones and Paige Moore, Davis' personnel file has nothing to do with the case. Therefore, production of his file is not reasonably calculated to lead to the discovery of admissible evidence. Deutsch's argument that Davis may have been threatened or criticized after asking for adequate staffing at the facility "is purely speculative and not based upon any information found in the thousands of documents already produced...." Beverly also argues that the Douglas case appears to be the only case which holds that a hospital does not have standing to assert a privacy right on behalf of its employees. Beverly also distinguishes the Douglas case because Davis was not a care-giver.
*781 As for the concern of the privacy of the residents of the nursing home, Beverly argues that while the residents were aware when they were admitted to the facility that they would have a roommate who might have family and invite a guest, plus medically necessary visits by staff members, that does not mean that they have agreed to have lawyers, photographers, and vidographers invading their privacy. Beverly relies in part upon the Florida Constitution's right to privacy under Article I, § 23. It also points to section 400.022(m), Florida Statutes, which guarantees a resident of nursing homes a right to privacy. While Deutsch argues that the specific room where she resided is important because the design or organization of a room can cause or contribute to falls, Beverly notes that Deutsch's complaint "is completely devoid of any allegation that the design, construction, or maintenance of Respondent's room caused or contributed to her injury." Beverly also argues that the trial court failed to recognize that there is a difference between a resident's room in a nursing home and a public place. Even an occupied motel room takes on the status of a dwelling. Gnann v. State, 662 So.2d 406 (Fla. 2d DCA 1995). Beverly also notes that assuming that the proximity of Deutsch's former rooms to the nurse's station is an issue, that matter can be addressed by blueprints and measurements without going into a resident's private room.
The first issue is the extent of the right to privacy of the other residents of the nursing home. Section 400.022(m), Florida Statutes, guarantees:
The right to have privacy in treatment and in caring for personal needs; to close room doors and to have facility personnel knock before entering the room, except in the case of an emergency or unless medically contraindicated; and to security in storing and using personal possessions. Privacy of the resident's body shall be maintained during, but not limited to, toileting, bathing, and other activities of personal hygiene, except as needed for resident safety or assistance. Residents' personal and medical records shall be confidential and exempt from the provisions of s. 119.07(1).
There are no Florida cases construing this provision. See generally Troy J. Crotts & Daniel A. Martinez, The Nursing Home Residents' Rights ActA Good Idea Gone Bad!, 26 Stetson L.Rev. 599 (1996) (arguing that while the law is well-intended, it goes too far in its punitive effect); H. Glenn Boggs & Ken Connor, Nursing Home Tort VictimsRights & Remedies, 63 Fla. B.J. 11 (Feb.1989) (listing patients' rights under § 400.022, including the right to privacy). In Colonial Medical Specialities of South Florida, Inc. v. United Diagnostic Labs., Inc., 674 So.2d 923 (Fla. 4th DCA 1996), the Fourth District granted a petition for certiorari and quashed an order requiring a medical office to provide patients' addresses and telephone numbers to the respondent-laboratories where the respondent's suit against petitioner involved the non-payment for certain patients' blood work. The court said that "[t]he nature of the dispute, and the fact that respondent may already have in its records some of this patient information, does not negate the rights of such non-party patients to privacy and confidentiality as to their personal information." Id. at 923.
This court has recognized that certiorari may be granted when the privacy rights of non-parties is involved. National Security Fire & Casualty Co. v. Dunn, 705 So.2d 605, 608 (Fla. 5th DCA 1997), cited the Fourth District's case with approval:
In [Colonial Medical]. ..., the fourth district held that it was a departure from the essential requirements of law to compel the production of nonparty medical records where the right to privacy had not been overcome, there had not been an in camera inspection, and there had not been a showing of need. In the instant case, proper consideration *782 was not given to the privacy rights of [the non-parties].
The Fourth District also decided Berkeley v. Eisen, 699 So.2d 789 (Fla. 4th DCA 1997), stating that, while a party may be using its clients' shield of privacy for financial records for its own protection, this possibility is not reason enough to cause a judicial invasion into the individual non-party's constitutional right of privacy. Berkeley, relying upon Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), and Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533, 536 (Fla.1987), noting that Florida's Constitution "specifically provides a constitutional right of privacy broader in scope than the protection provided in the United States Constitution":
"[T]he party seeking discovery of confidential information must make a showing of necessity which outweighs the countervailing interest in maintaining the confidentiality of such information." Higgs v. Kampgrounds of America, 526 So.2d 980, 981 (Fla. 3d DCA 1988); see also CAC-Ramsay Health Plans, Inc. v. Johnson, 641 So.2d 434 (Fla. 3d DCA 1994). As our supreme court explained in Rasmussen:

In deciding whether a protective order is appropriate in a particular case, the court must balance the competing interests that would be served by granting discovery or by denying it. Thus, the discovery rules provide a framework for judicial analysis of challenges to discovery on the basis that the discovery will result in undue invasion of privacy. This framework allows for broad discovery in order to advance the state's important interest in the fair and efficient resolution of disputes while at the same time providing protective measures to minimize the impact of discovery on competing privacy interests.

Berkeley, 699 So.2d at 791-92; see Coastal Physician Servs. of Broward County, Inc. v. Ortiz, 720 So.2d 324, 326 (Fla. 4th DCA 1998) (where a discovery order compels production of matters which implicate privacy rights, element of irreparable harm is demonstrated); see also Voytish v. Ozycz, 695 So.2d 1301 (Fla. 4th DCA 1997) (petition for writ of certiorari granted to quash discovery order of the trial court compelling petitioner, a non-party parent of the defendant, to produce three years of tax returns because respondent failed to meet his burden to show any need for this discovery which would override the privacy rights of the non-party).
The second issue is whether Beverly has standing to protect the right of privacy of its employee, Alan Davis. In Douglas, a patient sued the hospital alleging negligent administration of chemotherapy. The patient obtained a discovery order which required the hospital to produce all employment and personnel records, excluding committee evaluations, of four nurses employed by the hospital and allegedly involved in the accident. The hospital petitioned for a writ of certiorari to quash the order, but the First District held that the records required to be produced by the hospital were discoverable. More significantly, the court held that the hospital did not have standing to assert the privacy rights of the nurses. Deutsch therefore argues that Beverly does not have standing to assert the privacy rights of its employee, Davis.
Other states have been more protective of third-party personnel records. California, for instance, has a privacy provision in its constitution similar to that in Florida. The leading case on this issue is Board of Trustees v. Superior Court, 119 Cal.App.3d 516, 174 Cal.Rptr. 160 (1st Dist.1981), where a university employee was suing the university and various people connected with the university in a defamation action. The trial court granted discovery of personnel, tenure and promotion records and files of one of the defendant employees, Dr. Lucas, which were in the custody of the university. The appellate court reversed, stating:

*783 It seems manifest, and we observe no contrary contention, that such records and files relate to the private affairs of Dr. Lucas, and are maintained in confidence by the University. No direct relevance to the issues of the defamation action is apparent, and again [the plaintiff] takes no contrary position; he merely argues that such disclosure might lead to the required proof of malice of one or more of the several defendants of his action. And even were such records' and files' direct relevance more readily apparent, we are of the opinion that a proper balancing of the competing values would here necessarily weigh in favor of Dr. Lucas' right of privacy.
Nor is a "compelling state interest" requiring such disclosure discernable to us.
It is concluded that the superior court abused its discretion in granting [the plaintiff] discovery of the personnel, tenure, and promotion records and files of Dr. Lucas in the custody of the University.
Board of Trustees, 174 Cal.Rptr. at 165; see Rancho Publications v. Superior Court, 68 Cal.App.4th 1538, 81 Cal.Rptr.2d 274 (4th Dist.1999) (citing Board of Trustees; qualified constitutional privacy privilege protects against civil discovery which impinges upon free speech or privacy concerns of the recipients of discovery demands and innocent third parties as well); see also Valley Presbyterian Hosp. v. Superior Court, 94 Cal.Rptr.2d 137 (App.2d Dist.2000) (state constitutional right to privacy provides a qualified, not absolute, bar to discovery; a party to an action, such as a Hospital, may assert the privacy rights of third parties such as its employees; the court is required to balance the right of privacy with the need for discovery).
In Rosado v. Bridgeport Roman Catholic Diocesan Corp., 1994 WL 700344 (Conn.Super.Ct.1994), a plaintiff alleged that he was sexually assaulted by the defendant Pcolka while Pcolka was a priest employed by the defendant Bridgeport Roman Catholic Diocese. The court noted that while the rules of civil discovery are liberally construed, that policy is qualified where the object of discovery is a personnel file:
The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case. Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning ... [another], the entire file should not be disclosed. No ... [party] has the right to conduct a general "fishing expedition" into the personnel records of a[nother]. Any request for information that does not directly relate to legitimate issues that may arise in the course of the ... [trial] ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said:
"It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility."

People v. Sumpter, 75 Misc.2d 55, 60, 347 N.Y.S.2d 670 (1973). Because discovery of matters contained in a ... personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters shall be disclosed. An in camera inspection of the documents involved, therefore, will under most circumstances be necessary. See United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Commonwealth v. Dominico, [1 Mass.App.Ct. 693, 306 N.E.2d 835 (1974)] People v. Bottom, 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974).... [I]n resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be specific and should set forth the issue in the *784 case to which the personnel information sought will relate. The trial court should make available to the [party] only information that it concludes is clearly material and relevant to the issue involved. See People v. Fraiser, 75 Misc.2d 756, 757, 348 N.Y.S.2d 529 (1973) (subpoena duces tecum issued for personnel files of police witnesses in prosecution for possession and sale of controlled drugs). In this regard, the trial court should exercise its discretion in deciding the temporal relevancy or remoteness of material sought. Cf. State v. Carbone, 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977); State v. Mahmood, 158 Conn. 536, 540, 265 A.2d 83 (1969); State v. Towles, 155 Conn. 516, 523-24, 235 A.2d 639 (1967) (relating to the introduction of evidence at trial); see also 1 Wharton, Criminal Evidence (12th Ed.) 151. Because the law furnishes no precise or universal test of relevancy, the question must be determined on a case by case basis according to the teachings of reason and judicial experience.
(quoting from State v. Januszewski, 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981)).
Florida's Constitution provides strong protection in regard to privacy. Plus, there is a pronounced concern for the privacy of nursing home patients. We do not agree with Douglas in respect to its holding that an employer does not have standing to assert the privacy rights of its employees. Accordingly, we grant the petition and quash the discovery order of the trial court. We acknowledge and certify conflict with Douglas.
PETITION GRANTED; ORDER QUASHED.
DAUKSCH and HARRIS, JJ., concur.