827 So.2d 936 (2002)
ALTERRA HEALTHCARE CORPORATION, etc., et al., Petitioners,
v.
ESTATE OF Francis SHELLEY, etc., Respondent.
No. SC01-709.
Supreme Court of Florida.
September 12, 2002.
*937 Marie A. Borland and Donna J. Fudge of Hill, Ward & Henderson, P.A., Tampa, FL, for Petitioners.
*938 Camille Godwin and Kenneth L. Connor of Wilkes & McHugh, P.A., Tallahassee, FL, for Respondent.
Scott Mager and Gary S. Gaffney of Mager & Associates, P.A., Fort Lauderdale, Florida; and Quintairos, McCumber, Prieto & Wood, P.A., Miami, FL, for Beverly Enterprises-Florida, Inc., Amicus Curiae.
LEWIS, J.
We have for review Alterra Health Care Corp. v. Estate of Shelley, 779 So.2d 635 (Fla. 1st DCA 2001), which expressly and directly conflicts with the opinion in Beverly Enterprises-Florida, Inc. v. Deutsch, 765 So.2d 778 (Fla. 5th DCA 2000). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

MATERIAL FACTS
The executor of the Estate of Frances Shelley filed an action against Alterra Health Care Corporation (a/k/a Alternative Living Services, Inc., d/b/a Sterling House of Tallahassee) and Sterling House Corporation (d/b/a Sterling House of Tallahassee) (collectively "Sterling House"), an assisted living facility, alleging negligence, breach of statutory rights, and wrongful death. The decedent, Mrs. Shelley, legally blind and a person over sixty years of age who suffered infirmities to the extent that her ability to provide for her own care and protection was impaired, was a resident of Sterling House from April 1998 until August 10, 1999. The executor alleged that, during the evening or early morning hours of August 9 or 10, 1999, Mrs. Shelley caught her leg in the footboard of her bed and was not found by Sterling House staff until six to eight hours later, when she was discovered hanging from the footboard upside down. It was alleged that it was known by the staff that Mrs. Shelley had an unsteady gait, was at risk for falls, and was incontinent, requiring regular, periodic observation. The executor alleged that, during the course of the six- to eight-hour period, Mrs. Shelley suffered trauma to her left leg, which ultimately required surgery resulting in the amputation of Mrs. Shelley's leg above the knee. The executor asserted, among many allegations, that Sterling House did not employ or maintain sufficient staff (particularly during evening shifts) to properly supervise and assist its residents; that it failed to properly train staff; and that it improperly retained staff. The executor further alleged that the staff at Sterling House failed to check on Mrs. Shelley, failed to provide her with access to adequate and appropriate health care, protective, and support services, and failed to protect her from foreseeable harm.
During the course of discovery, the executor requested Sterling House to produce certain documentation pertaining to each employee who provided any care or service to Mrs. Shelley while she resided at the facility.[1] While the executor acknowledged that most of the information *939 sought could likely be found within an employee's personnel file, he asserted that he did not seek production of allegedly confidential materials, and agreed to redaction of purely private and confidential information such as home telephone numbers and social security numbers from the employee documentation. Sterling House objected to the request, in part, on the basis that it violated the employees' constitutional rights to privacy.
The executor moved to compel the production of the requested material, arguing that the information was relevant because it would help him determine (i) whether the employees were qualified; (ii) the extent of Sterling House's knowledge of its employees' qualifications based upon any disciplinary information in their files; and (iii) whether the employees were certified or licensed. He also argued that, because Sterling House might seek to impeach its former employees who were witnesses in the case with information from their personnel files, he was entitled to review the documentation from which such impeachment could be drawn to "weigh [such employees'] credibility." Finally, the executor argued that the employee information might also contain information revealing possible employee concerns regarding the operation of the facility, and was therefore relevant to the issue of the facility's notice of such concerns.
At the hearing on the executor's motion to compel, Sterling House objected to the motion on the basis that the documentation the executor was seeking contained information protected from disclosure under the privacy provision of the Florida Constitution. See art. I, § 23, Fla. Const. Sterling House also argued that the executor had the burden of demonstrating a need for the documentation which it unilaterally classified as confidential, which outweighed the employees' privacy rights. The trial court granted the motion to compel and disagreed with Sterling House that the executor was seeking documentation that would be classified as confidential under the circumstances.
Sterling House then filed a petition for writ of certiorari to the First District Court of Appeal, seeking an order quashing that portion of the trial court's order which compelled the production of the materials requested. The First District denied the petition for writ of certiorari on the basis that it was bound by its decision in North Florida Regional Hospital, Inc. v. Douglas, 454 So.2d 759 (Fla. 1st DCA 1984), to hold that Sterling House did not have standing to raise the privacy rights of its employees. Alterra Health Care Corp., 779 So.2d at 636. However, the First District acknowledged and certified conflict with Beverly Enterprises-Florida, Inc. v. Deutsch, 765 So.2d 778 (Fla. 5th DCA 2000), in which the Fifth District had held that an employer had standing there to assert the privacy rights of its employees, and had certified conflict with Douglas.[2]
*940 This timely petition for review followed.[3]

PRIVACY RIGHT IN NONPUBLIC EMPLOYMENT RECORDS
The issue addressed here is whether an employer that is not subject to the Public Records Act[4] has standing under Florida law to challenge the disclosure of nonparty personnel records pursuant to court-ordered discovery[5] by asserting that information contained therein is private.[6] *941 This Court has acknowledged that the Florida Constitution contains, in article I, section 23, a strong right of privacy provision. See Shaktman v. State 553 So.2d 148 (Fla.1989). In Shaktman, the Court reasoned that the enactment of this provision "ensures that individuals are able `to determine for themselves when, how and to what extent information about them is communicated to others.'" Id. at 150 (quoting from Alan F. Westin, Privacy and Freedom 7 (1967)). There, we spoke of a "zone of privacy into which not even government may intrude without invitation or consent," elaborating:
Because this power is exercised in varying degrees by differing individuals, the parameters of an individual's privacy can be dictated only by that individual. The central concern is the inviolability of one's own thought, person, and personal action. The inviolability of that right assures its preeminence over `majoritarian sentiment' and thus cannot be universally defined by consensus.
Shaktman, 553 So.2d at 150-51. Such privacy right may, under certain circumstances, extend to personal information contained in nonpublic employee personnel files.

EMPLOYERS' JUS TERTII STANDING TO ASSERT EMPLOYEE RIGHTS
Nonetheless, even where a constitutional right to privacy is implicated, that right is a personal one, inuring solely to individuals. Cf. Parnell v. St. Johns County, 603 So.2d 56, 57 (Fla. 5th DCA 1992) (holding that the petitioner had the right not to have her state court cause of action asserting an individual right to privacy claim stayed pending a federal action brought by her employer challenging the same nudity ordinance, observing that the petitioner had "raised an important state constitutional issue which pertains to her and not to her employer, because the right to privacy extends only to natural persons"). Under traditional jus tertii jurisprudence, "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). However, the United States Supreme Court has recognized certain limited exceptions to this general rule:
We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, [Singleton v. Wulff, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)]; the litigant must have a close relation to the third party, id., at 113-114, 96 S.Ct. 2868; and there must exist some hindrance to the third party's ability to protect his or her own interests. *942 Id., at 115-116, 96 S.Ct. 2868. See also Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). These criteria have been satisfied in cases where we have permitted criminal defendants to challenge their convictions by raising the rights of third parties. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); see also McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). By similar reasoning, we have permitted litigants to raise third-party rights in order to prevent possible future prosecution. See, e.g., Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
Powers, 499 U.S. at 410-11, 111 S.Ct. 1364.
The "injury in fact" asserted by the employer here is potential tort liability for disclosure of private information contained in the employees' personnel files. Even in the context of public employment records, this Courtwhile holding that the documents were subject to disclosurehas expressed the opinion that "the right of access to public records is not the right to rummage freely through public employees' personal lives."[7]Michel, 464 So.2d at 546. Sterling House has not brought to our attention, nor have we encountered, any case in which the alleged threat of liability or responsibility in a civil action against the party seeking to assert a third-party right has been addressed in determining jus tertii standing. The available decisions address only threats of criminal prosecution and economic sanctions. Cf. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (holding that a licensed beer vendor, who would be subject to sanctions and the loss of her license for violation of the subject statute, had standing to raise the equal protection claim of a male customer challenging a statutory scheme prohibiting the sale of beer to males under the age of 21); cf. also Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (holding that Baird, who was convicted of giving a young woman a package of Emko vaginal foam at the close of his address to a group of students at Boston University, had standing to raise the equal protection claim of unmarried persons denied access to contraceptives under the challenged statute); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (holding that the Executive Director of the Planned Parent-hood *943 League of Connecticut and a licensed physician who had prescribed contraceptives for married persons and been convicted as accessories to the crime of using contraceptives had standing to raise the constitutional rights of their patients). In Craig, the United States Supreme Court explained:
[O]ur decisions have settled that limitations on a litigant's assertion of jus tertii are not constitutionally mandated, but rather stem from a salutary "rule of self-restraint" designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative. See, e.g., Barrows v. Jackson, 346 U.S. 249, 255, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); see also Singleton v. Wulff, 428 U.S. 106, 123-124, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (Powell, J., dissenting). These prudential objectives, thought to be enhanced by restrictions on third-party standing, cannot be furthered here, where the lower court already has entertained the relevant constitutional challenge and the parties have soughtor at least have never resistedan authoritative constitutional determination. In such circumstances, a decision by us to forgo consideration of the constitutional merits in order to await the initiation of a new challenge to the statute by injured third parties would be impermissibly to foster repetitive and time-consuming litigation under the guise of caution and prudence. Moreover, insofar as the applicable constitutional questions have been and continue to be presented vigorously and "cogently," Holden v. Hardy, 169 U.S. 366, 397, 18 S.Ct. 383, 42 L.Ed. 780 (1898), the denial of jus tertii standing in deference to a direct class suit can serve no functional purpose. Our Brother Blackmun's comment is pertinent: "[I]t may be that a class could be assembled, whose fluid membership always included some [males] with live claims. But if the assertion of the right is to be `representative' to such an extent anyway, there seems little loss in terms of effective advocacy from allowing its assertion by" the present jus tertii champion. Singleton v. Wulff, supra, at 117-118, 96 S.Ct. 2868.
429 U.S. at 193-94, 97 S.Ct. 451. Applying this reasoning, it is at least questionable whether Sterling House's expressed concern satisfies the "injury in fact" prong of the three-part standing test.
If, however, it does, then we must next determine whether the litigant seeking to assert the right in this case has a "close relation" to the third party.[8] The First District in Douglas held that "a mere employee/employer relationship is not the kind of special relationship necessary for third-party standing." 454 So.2d at 760. The Fifth District in Deutsch expressly disagreed. 765 So.2d at 784. In so doing, however, it focused on the character of the contents of the personnel file and its relevance to the litigation in which disclosure was sought, rather than on the employer-employee relationship:
In Rosado v. Bridgeport Roman Catholic Diocesan Corp., 1994 WL 700344 *944 (Conn.Super.Ct.1994), a plaintiff alleged that he was sexually assaulted by the defendant Pcolka while Pcolka was a priest employed by the defendant Bridgeport Roman Catholic Diocese. The court noted that while the rules of civil discovery are liberally construed, that policy is qualified where the object of discovery is a personnel file:
The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case. Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning ... [another], the entire file should not be disclosed. No ... [party] has the right to conduct a general "fishing expedition" into the personnel records of a[nother]. Any request for information that does not directly relate to legitimate issues that may arise in the course of the ... [trial] ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said:
"It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility."

People v. Sumpter, 75 Misc.2d 55, 60, 347 N.Y.S.2d 670 (1973).
Deutsch, 765 So.2d at 783-84; cf. also Alterra Health Care Corp., 779 So.2d at 636 n. 1 (Wolf, J., specially concurring) ("In addition, Alterra and its employees have a substantial relationship and consistent interests which favor the granting of third party standing.").
The last prong to consider is whether there is "some hindrance to the third party's ability to protect his or her own interests." While Judge Wolf, in his specially concurring opinion in Alterra Health Care Corp., opined that there was,[9] the court in Douglas observed that the nurse employees had, in fact, moved to intervene in the litigation, lending credence to the conclusion that, at least in that case, there was no hindrance. See Douglas, 454 So.2d at 761 ("Also, the nurses have moved to intervene. If they are allowed to intervene, they can assert their own rights."); cf. also Rosado v. Bridgeport Roman Catholic Diocesan Corp., 60 Conn.App. 134, 758 A.2d 916 (2000) (allowing non-party priests to intervene in the litigation to protest production of their personnel records on the alleged grounds that the records are protected from disclosure by the United States Constitution, the state constitution, state statutes, and the common law).
On balance, we conclude that application of the three-part jus tertii analysis militates against recognizing third-party standing for nonpublic employers involved in requests for production of personnel records to assert their employees' privacy rights in those records. This does not necessarily mean, however, that such important nonparty rights should not be considered, or that the right to privacy and the right to know should not be weighed, during the discovery process.

THE TRIAL COURT'S RELEVANCY ANALYSIS MAY IMPLICATE A WEIGHING OF COMPETING RIGHTS
As this Court stated in Allstate Insurance Co. v. Langston, 655 So.2d 91 (Fla.1995), it is axiomatic that discovery in civil cases must be relevant:
Discovery in civil cases must be relevant to the subject matter of the case, *945 and must be admissible or reasonably calculated to lead to admissible evidence. Brooks [v. Owens], 97 So.2d [693, 699 (Fla.1957)]; see also Amente v. Newman, 653 So.2d 1030 (Fla.1995) (concept of relevancy is broader in discovery context than in trial context, and party may be permitted to discover relevant evidence that would be inadmissible at trial if it may lead to discovery of relevant evidence); Krypton [Broadcasting of Jacksonville, Inc. v. MGM-Pathe Communications Co.], 629 So.2d [852, 854 (Fla. 1st DCA 1993)] ("It is axiomatic that information sought in discovery must relate to the issues involved in the litigation, as framed in all pleadings."); Fla. R. Civ. P. 1.280(b)(1) (discovery must be relevant to the subject matter of the pending action).
Id. at 94. Further, in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1100 (Fla. 1987), this Court observed that irreparable harm such as might be occasioned by an order that would let the "cat out of the bag" and provide the opponent "material that could be used by an unscrupulous litigant to injure another person" was the governing standard for determining whether a petition for writ of certiorari would, in a particular case, be an appropriate vehicle for challenging nonfinal orders granting discovery. As this Court observed in Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla. 1987):
In deciding whether a protective order is appropriate in a particular case, the court must balance the competing interests that would be served by granting discovery or by denying it. North Miami General Hospital v. Royal Palm Beach Colony, Inc., 397 So.2d 1033, 1035 (Fla. 3d DCA 1981); Dade County Medical Association v. Hlis, 372 So.2d 117, 121 (Fla. 3d DCA 1979). Thus, the discovery rules provide a framework for judicial analysis of challenges to discovery on the basis that the discovery will result in undue invasion of privacy. This framework allows for broad discovery in order to advance the state's important interest in the fair and efficient resolution of disputes while at the same time providing protective measures to minimize the impact of discovery on competing privacy interests.
Accordingly, we must assess all of the interests that would be served by the granting or denying of discoverythe importance of each and the extent to which the action serves each interest.
Id. at 535. While the Fifth District in Deutsch incorrectly concluded that an employer has standing to raise the privacy interest of its employees as a shield against discovery, it correctly observed that employers have standing to oppose production of personal information contained in employee files on the ground that such information is not relevant to the pending litigation.[10] Important to our analysis here, in the context of considering a relevancy objection, the trial court can consider the constitutional rights of third parties who would be substantially affected by the outcome of the litigation.[11]
As appropriate, the trial court may conduct an in-camera inspection of the subject records. In that context, the *946 trial court may balance (on an ad hoc basis) "the right to privacy and the right to know." City of Billings, 649 P.2d at 1290 (holding that the Montana Human Rights Commission, as part of its investigation of a discrimination complaint, could require an employer to submit certain evidence from its personnel files relating to persons other than the complainants, but that the HRC had to handle this information in a manner which would minimize the invasion of those employees' privacy rights).
As a predicate to such review, the record custodian should direct the trial court's attention to the allegedly private information. Cf. First Healthcare Corp. v. Hamilton, 740 So.2d 1189, 1193 (Fla. 4th DCA 1999) (requiring the defendant to produce the reports for which a privilege was claimed for an in-camera inspection, with a privilege log and an affidavit of the basis of the claimed privilege). Even though the scope of discovery is broad, it must be relevant to issues properly framed by the pleadings in the litigation. Legitimate employee privacy concerns may also be addressed by a carefully crafted discovery order. However, given the broad scope of discovery pursuant to Florida Rule of Civil Procedure 1.280,[12] if private and confidential information that is not relevant is redacted or withheld from the *947 documents produced, it would be appropriate to require the records custodian to provide to the requesting party details concerning the information withheld, to enable the parties to fully address the issue at the trial level and to challenge the trial court's ruling, if necessary.[13]
Based upon the foregoing, we approve the decision in Alterra Health Care Corp. to the extent it is consistent with this opinion, and disapprove the reasoning in Deutsch, with respect to the issue of whether a private employer has standing to challenge a discovery request based exclusively upon the privacy interest of its employees in their personnel files. In so doing, however, we recognize that nonpublic employees may have a privacy interest in certain information contained in their personnel files, which they may assert as intervenors in the litigation. Moreover, in the appropriate case, the trial court should fully consider the employees' alleged privacy interestin the context of determining the relevancy of any discovery request which implicates itregardless of whether the subject employees have intervened or not.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs with an opinion.
PARIENTE, J., concurring.
I agree with the majority that Sterling House lacked standing to assert the constitutional right of privacy of its employees. Further, I also agree that trial courts can and should make appropriate provisions in orders compelling discovery to protect against the unnecessary disclosure of confidential or private information. See Amente v. Newman, 653 So.2d 1030, 1032 (Fla.1995); Berkeley v. Eisen, 699 So.2d 789, 790 (Fla. 4th DCA 1997).
I write to emphasize, however, that the courts also must be alert to the possibility of a litigant raising a claim of the privacy rights of others as a subterfuge to prevent the disclosure of relevant information. In this case, the nursing home had complete access to all of its employees' files and thus had the ability to use that information to impeach those former employees who were witnesses in this case with information gained from those files. Yet, the nursing home then attempted to prevent the plaintiff from having that same access. The question becomes whom was the nursing home protecting when it raised a privacy objection to information in its personnel files. In this case, as the majority points out, the plaintiff had already agreed to a redaction of purely private information such as home telephone numbers and social security numbers.
*948 We reiterated the importance of our "broad and liberal" discovery rules in our adversary system in Allstate Insurance Co. v. Boecher, 733 So.2d 993, 995 (Fla. 1999). Thus, while being sensitive that unrestricted disclosure may in a given case implicate an individual's reasonable expectation of privacy, courts must remain vigilant in preserving our discovery rules' basic framework, which envisions "broad discovery in order to advance the state's important interest in the fair and efficient resolution of disputes." Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533, 535 (Fla.1987).
NOTES
[1] Specifically, in paragraph 21(a-g) of the discovery request, the executor asked Sterling House to produce the following:

Copies of any and all documentation maintained by Defendants for each employee of Sterling House of Tallahassee who provided any care or service to Frances Shelley at the facility, including but not limited to the following information:
(a) Any and all applications for employment;
(b) Copies of any and all documentation obtained by the facility about said employees from any third source, such as employment verification information from other employers, reports from any law enforcement or state administrative agency, or any abuse reporting agency where such document is not privileged by state or federal law creating the abuse reporting agency;
(c) Copies of any and all licensing certification for said employees;
(d) Any and all documents which would contain disciplinary information on said employees by the nursing home, including letters of reprimand, or complaints by outside persons;
(e) Any and all documents submitted by said employees or recorded by the facility concerning complaints registered by the employees;
(f) Any and all performance evaluations completed for said employees; and
(g) Any and all forms, letters or notes relating to termination of said employees' service at the nursing home, including writings completed by the employees or any other member of the nursing home's staff or administration.
[2] In a concurring opinion below, Judge Wolf noted that, if the Court were able to "work with a clean slate," he would follow Deutsch. Judge Wolf reasoned:

Innocent employees who are not parties to an action against their employer should not be required to hire a lawyer to protect their interests. It would be better to allow the employer, who is a party to the action and who collected the information, to assert its employees' privacy rights guaranteed by the Florida Constitution.
Alterra Health Care Corp., 779 So.2d at 636 (Wolf, J., specially concurring). Judge Wolf also observed that the "criteria for granting third party standing to assert a constitutional right are not a barrier in this case." Id. at 636 n. 1 (citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623 n. 3, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) and Craig v. Boren, 429 U.S. 190, 193, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)). He concluded that intervention by the employees "would be costly and inefficient," and that Sterling House and its employees had a "substantial relationship and consistent interests which favor[ed] the granting of third-party standing." Id.
[3] After the initial brief was filed in this case on May 10, 2001, this Court was notified that the underlying action between the parties was amicably resolved by settlement. Accordingly, on May 31, 2001, the executor filed a motion to dismiss the petition for discretionary review, asserting that Sterling House was unwilling to execute a joint stipulation for dismissal. Sterling House filed a response, urging this Court to address both the conflict certified by the First District Court of Appeal and the substantive order of the trial court which compelled production of the employee information. We decline to address in detail all substantive aspects of the discovery order rendered by the trial court. Cf. Antell v. Attorney General, 52 Mass.App.Ct. 244, 752 N.E.2d 823, 825 n. 1 (2001) (observing that the plaintiff's need for discovery was moot where the underlying litigation had been settled). We do, however, address the general nature of the discovery sought here with regard to the privacy claim.
[4] Florida's constitutional right to privacy provision states that the right to privacy "shall not be construed to limit the public's right of access to public records." Art. I, § 23, Fla. Const. Absent an applicable statutory exception, pursuant to Florida's Public Records Act (embodied in chapter 119, Florida Statutes), public employees (as a general rule) do not have privacy rights in such records. See Michel v. Douglas, 464 So.2d 545 (Fla.1985) (holding that with the exception of personal information for certain types of occupations that are exempted from public disclosure by section 119.07(3)(i), Florida Statutes (1999), there is no state or federal right of disclosural privacy in hospital personnel records that shields them from disclosure pursuant to a Public Records Act request). Further, this Court has made it clear that only the custodian of such records can assert any applicable exemption; not the employee. See Tribune Co. v. Cannella, 458 So.2d 1075, 1079 (Fla. 1984). However, at least one court has suggested that an employer may be subject to potential civil liability for the unwarranted disclosure of public records. See Williams v. City of Minneola, 575 So.2d 683, 687 (Fla. 5th DCA 1991).
[5] In Berkeley v. Eisen, 699 So.2d 789 (Fla. 4th DCA 1997), Justice Pariente (then writing the Fourth District's majority opinion) expressed the view that discovery orders may implicate constitutional rights:

Court orders compelling discovery constitute state action that may impinge on constitutional rights, including the constitutional right of privacy. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17, (1984); South Florida Blood Serv., Inc. v. Rasmussen, 467 So.2d 798, 803 (Fla. 3d DCA 1985), aff'd, 500 So.2d 533 (Fla.1987). As recognized by our supreme court's decision in Rasmussen, "[t]he potential for invasion of privacy is inherent in the litigation process." 500 So.2d at 535.
Id. at 790.
[6] In other jurisdictions, some courts have determined (albeit in the context of public employment) that employees have a privacy right in otherwise personal information when it is contained in their employment records. See Montana Human Rights Division v. City of Billings, 199 Mont. 434, 649 P.2d 1283, 1288 (1982) ("It may well be unreasonable for an employee to expect that this information will never be divulged to prospective employers. It does not necessarily follow that, therefore, this information is unprotected by the [state constitutional] right of privacy under all other circumstances, even where an employee can reasonably expect it will not be divulged, such as in an investigation or during a public hearing in which the employee is only remotely involved."); Trenton Times Corp. v. Board of Education 138 N.J.Super. 357, 351 A.2d 30, 33 (1976) ("The policy to keep performance ratings [contained in personnel records] confidential has been adopted: first, to protect the right of privacy of the government employee; second, because the evaluations are subjective opinions of the performance of the employee that vary with the person giving the rating; third, public disclosure would impede receiving candid evaluations; and fourth, a supervisor could use the public nature of these ratings as a vindictive mechanism against employees he disliked.").
[7] This observation prompted the Court to make the non-binding suggestion that agencies not maintain sensitive information in the personnel files unrelated to the employee's qualifications or performance of job duties:

We suggest, therefore, that public agencies monitor their personnel records and exclude information not related to their employees' qualifications for their jobs or to the performance of their jobs. Compare News-Press v. Wisher, 345 So.2d [646, 648 (Fla.1977)] ("No policy of the state protects a public employee from the embarrassment which results from his or her public employer's discussion or action on the employee's failure to perform his or her duties properly.") This suggestion, however, is only that. We do not impose a duty on an agency to so act, and do not create or recognize a cause of action by an employee for the employer's failure to do so. What is kept in personnel files is largely a matter of judgment of the employer, but whatever is so kept is public record and subject to being published.
Michel, 464 So.2d at 546-47; cf. also § 400.4174, Fla. Stat. (2000) (requiring level 1 background screening, as set forth in chapter 435, to be conducted on all assisted living facility employees hired on or after October 1, 1998, who perform personal services as defined in § 400.402(17)); § 435.11(b), Fla. Stat. (2000) (providing that it is a misdemeanor of the first degree for any person to use employee screening records information "for purposes other than screening for employment or release records information to other persons for purposes other than screening for employment").
[8] Aside from the area of workers' compensation law, in at least one other context (which is not analogous), the employer-employee relationship has been recognized as "special." Cf. Gross v. Family Services Agency, Inc., 716 So.2d 337, 338 (Fla. 4th DCA 1998) (discussing, inter alia, the employer-employee relationship as qualifying for the "special relationship" exception to the general rule that "a person or other entity generally has no duty to take precautions to protect another against criminal acts of third parties"), approved, 758 So.2d 86 (Fla.2000). However, the role of the employer as a custodian of employee personnel records was not the focus in Gross. It is not entirely clear whether the employer-employee relationship would satisfy the United States Supreme Court's "close relation" test.
[9] See Alterra Health Care Corp., 779 So.2d at 636 n. 1 (Wolf, J., specially concurring).
[10] Thus, the court in Deutsch recognized, as required by our decisions, that information which is both material and relevant to the litigation should be disclosed and the judicial authority should exercise discretion to determine disclosure of contested information. See Deutsch, 765 So.2d at 783-84.
[11] This was suggested by the United States Supreme Court's discussion of the jus tertii issue in Craig:

Indeed, the jus tertii question raised here is answered by our disposition of a like argument in Eisenstadt v. Baird, supra. There, as here, a state statute imposed legal duties and disabilities upon the claimant, who was convicted of distributing a package of contraceptive foam to a third party. [Note 5] Since the statute was directed at Baird and penalized his conduct, the Court did not hesitateagain as hereto conclude that the "case or controversy" requirement of Art. III was satisfied. 405 U.S., at 443, 92 S.Ct. 1029. In considering Baird's constitutional objections, the Court fully recognized his standing to defend the privacy interests of third parties. Deemed crucial to the decision to permit jus tertii standing was the recognition of "the impact of the litigation on the third-party interests." Id., at 445, 92 S.Ct. 1029. Just as the defeat of Baird's suit and the "[e]nforcement of the Massachusetts statute will materially impair the ability of single persons to obtain contraceptives," id., at 446, 92 S.Ct. 1029, so too the failure of Whitener to prevail in this suit and the continued enforcement of §§ 241 and 245 will "materially impair the ability of" males 18-20 years of age to purchase 3.2% beer despite their classification by an overt gender-based criterion. Similarly, just as the Massachusetts law in Eisenstadt "prohibit[ed], not use, but distribution," 405 U.S., at 446, 92 S.Ct. 1029 and consequently the least awkward challenger was one in Baird's position who was subject to that proscription, the law challenged here explicitly regulates the sale rather than use of 3.2% beer, thus leaving a vendor as the obvious claimant. [Note 5] The fact that Baird chose to disobey the legal duty imposed upon him by the Massachusetts anticontraception statute, resulting in his criminal conviction, 405 U.S., at 440, 92 S.Ct. 1029, does not distinguish the standing inquiry from that pertaining to the anticipatory attack in this case. In both Eisenstadt and here, the challenged statutes compel jus tertii claimants either to cease their proscribed activities or to suffer appropriate sanctions. The existence of Art. III "injury in fact" and the structure of the claimant's relationship to the third parties are not altered by the litigative posture of the suit. And, certainly, no suggestion will be heard that Whitener's anticipatory challenge offends the normal requirements governing such actions. See generally Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
Craig, 429 U.S. at 196-97 & n. 5, 97 S.Ct. 451; cf. also Note, Standing to Assert Constitutional Jus Tertii, 88 Harv. L.Rev. 423, 424 (1974) (asserting that jus tertii cases involve "a litigant's claim that a single application of a law both injures him and impinges upon the constitutional rights of third persons").
[12] Rule 1.280(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
[13] A similar procedure applies in the administrative forum. Pursuant to section 552, 5 U.S.C. (2000), public agencies are required to make available to the public for inspection and copying certain agency records. However, § 552(a)(2)(E) provides a mechanism for safeguarding private information in this process:

To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made.